In re EAGLE–PICHER INDUSTRIES, INC., et al., Debtors.

TRANSICOIL, INC. and Eagle–Picher Industries, Inc., Plaintiffs,

v.

BLUE DOVE DEVELOPMENT ASSOCIATES, Limited Partnership, and K–Jem, Inc., General Partner, Defendants.

Bankruptcy No. 1–90–00100.
Adv. No. 93–1067.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

March 31, 1994.

Stephen Karotkin, Weil, Gotshal & Manges, New York City, for Eagle-Picher Industries, Inc.

Pace Reich, Clark, Ladner, Fortenbaugh & Young and Ronald Bluestein, Philadelphia, PA, for Blue Dove Development Associates and K-Jem, Inc.

## ORDER ON CONTEMPT AND F.R.B.P. 9011

BURTON PERLMAN, Chief Judge.

This adversary proceeding deals with a controversy between the debtor plaintiffs and defendants who are lessors of premises occupied by plaintiff Transicoil. The present decision deals with a question of contempt of court on the part of defendants and counsel for defendants which the court has raised.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This matter is before the court pursuant to the Federal Rules of Bankruptcy Procedure.

Consideration of the contempt question requires that we review the history of this adversary proceeding. Plaintiff Transicoil, Inc. is a wholly-owned subsidiary of plaintiff Eagle–Picher Industries, Inc. ("EPI"), and both plaintiffs are Chapter 11 debtors in this court. Transicoil occupies a plant at Valley Forge, Pennsylvania, under lease from defendant Blue Dove Development Associates ("Blue Dove"), and has done so since prior to the bankruptcy filing January 7, 1991. (Blue Dove is a limited partnership in which defendant K–Jem is the general partner.) In their complaint filed June 18, 1993, plaintiffs seek relief having to do with the performance of obligations of the parties under the lease agreement between them, and interpretation of that lease. On September 7, 1993, we entered a temporary restraining order (Doc. 22) enjoining eviction by defendants, but ordering that Transicoil make missed rental payments totaling $225,000.00 into an escrow fund, and thereafter pay rent of $75,000.00 per month. In the same matter, we dealt with a motion for abstention by defendants and denied it. We required that the rent that plaintiffs were going to be paying, be paid into escrow "until, at least, the time that there is a closing on the permanent financing." In the course of this hearing, defendants orally, and for the first time, asserted that venue in this court was improper because of 28 U.S.C. § 1409(d).

After the temporary restraining order was entered September 7, 1993, on September 10, 1993 defendants moved that rent thereafter be paid directly to them and not into escrow, because permanent financing had now been arranged. At a hearing held on this motion on September 22, 1993, the court directed that payments be made in the manner requested in the motion, but reserved decision as to whether any escrow was still needed. By order entered November 23, 1993, we held that an escrow in the amount of $100,-000.00 was to be maintained.

On October 5, 1993, defendants moved to punish plaintiffs for contempt. The basis alleged for the motion was that plaintiffs had failed to make the escrow payments and further that the rent payment of $75,000.00 due October 1, 1993, had not been paid. Because the payment into escrow had not been made for the reason that the parties could not agree on escrow language, which reason was known to defendants and their counsel, and because the October 1, 1993 rent payment was made within the grace period permitted by the lease, we denied the motion for contempt by order entered November 23, 1993.

Also on October 5, 1993, defendants filed a motion to dismiss the complaint for lack of venue under 28 U.S.C. § 1409(d). Let us remember that this issue had been presented orally on August 18, 1993, and at that time defendants presented a memorandum on the subject. On October 25, 1993, plaintiffs filed a memorandum in opposition. On November 16, 1993, this court entered an order denying the motion (Doc. 42), and holding that venue was properly in this court.

Meanwhile, on October 13, 1993, after the temporary restraining order against defendants was entered on September 7, 1993, after defendants moved for payment of rent directly to it on September 9, 1993, and that relief was granted them on September 22, 1993, after defendants had moved here for contempt on October 5, 1993, for failure to pay into escrow or pay October, 1993 rent, and while the question of propriety of venue under 28 U.S.C. § 1409(d) was pending in this court, defendants commenced an action against Transicoil in the U.S. District Court for the Eastern District of Pennsylvania. The complaint in that suit was signed by Pace Reich, the attorney who has represented defendants here through all of the events described above. In that action, those defendants, Blue Dove and K–Jem, through counsel allege:

20. Defendant has refused to pay to Plaintiff the Interim Base Rent of Seventh–Five Thousand Dollars ($75,000) per month, due under the lease on June 1, 1993, July 1, 1993, August 1, 1993 and September 1, 1993.

21. Plaintiff obtained a permanent mortgage on September 7, 1993 and in a letter dated September 8, 1993, in accordance with Article 2, section 2.01(a) of the lease, definitively calculated the monthly Base Rent at Seventh–Six Thousand Seven Hundred Eighty–Eight Dollars and Thirty–Two Cents ($76,788.32) and notified Defendant, however, Defendant has refused to pay the Base Rent since June, 1993 although Defendant paid $75,000 to Plaintiff on October 6, 1993. A true and correct copy of the September 8, 1993 letter is attached hereto and included herein by reference as Exhibit "C".

22. On or about September 10, 1993 Plaintiff filed with the Bankruptcy Court a Motion for an Order Directing Payment of Rental. Plaintiff was forced into such filing with the Bankruptcy Court because Defendant had improperly filed an action in the Bankruptcy Court in Cincinnati, Ohio despite the Venue provisions of 28 U.S.C. § 1409(d) which provide venue over any such action solely in the District Court for the Eastern District of Pennsylvania. Despite denial of venue, the Bankruptcy Court had not yet decided the venue issue.

Additionally, the complaint in the Pennsylvania District Court asserts that jurisdiction is based on 28 U.S.C. § 1334(b), and venue is proper under 28 U.S.C. § 1409(e).

On November 16, 1993, this court denied the motion of defendants to dismiss for improper venue, holding that 28 U.S.C. § 1409(d) did not apply to make venue improper here.

On November 1, 1993, the present plaintiffs moved to enjoin the conduct of the Pennsylvania action by defendants, and that motion was granted November 17, 1993 (Doc. 44), following a hearing held that day. At the hearing on that motion, we expressed the view that the filing of the suit in Pennsylvania was an effort to do an end run around this court while this court had the venue issue under submission. We directed the parties to furnish us with memoranda on the question of whether the filing of the Pennsylvania suit amounted to contempt of this court.

■ In approaching the question at hand, we examine the assertion of venue in the Pennsylvania action while this court had under submission an attack on venue in the instant proceeding. Here, defendants asserted that this court was without venue because of the provision of 28 U.S.C. § 1409(d). The language of the statute there is:

§ 1409. **Venue of proceedings arising under Title 11 or arising in or related to cases under under Title 11**

\*     \*     \*     \*     \*     \*

(d) A trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim arising after the commencement of such case from the operation of the business of the debtor only in the district court for the district where a State or Federal court sits in which, under applicable non-bankruptcy venue provisions, an action on such claim may have been brought.

\*     \*     \*     \*     \*     \*

While we had under consideration interpretation of that statutory provision, defendants brought suit in Pennsylvania asserting venue based upon 28 U.S.C. § 1409(e). That provision contains the following language:

(e) A proceeding arising under title 11 or arising in or related to a case under title 11, based on a claim arising after the commencement of such case from the operation of the business of the debtor, may be commenced against the representative of the estate in such case in the district court for the district where the State or Federal court sits in which the party commencing such proceeding may, under applicable nonbankruptcy venue provisions, have brought an action on such claim, or in the district court in which such case is pending.

It may be readily seen that the language of these two subsections is indistinguishable. The only difference is that (d) deals with when a trustee may bring an action while (e) deals with when a nondebtor may bring an action. The language limiting the propriety of venue is identical in both subsections. This court had under submission interpreta-

tion of that limiting language at the time when defendants asserted venue in Pennsylvania, and subsequently determined that question adversely to defendants in our decision entered November 16, 1993. Clearly, defendants could not in good faith assert that venue lay in the Pennsylvania court because it was "based on a claim arising after the commencement of such case from the operation of the business of the debtor" when that very language was being interpreted here. The same is true of the other statements in each of the above-quoted paragraphs in the Pennsylvania complaint.

With respect to paragraph 20, this court had ordered that lease payments for June 1, 1993, July 1, 1993, August 1, 1993 and September 1, 1993 be paid into escrow. Transicoil had not refused to make those payments.

With respect to paragraph 21, Blue Dove and K–Jem had no right to rent at $76,788.32 per month, for this court had fixed rent payments at $75,000.00 per month pending resolution of the lease dispute between the parties which was pending in this court.

With respect to paragraph 22, it was not true that "Defendant [Transicoil] had improperly filed an action in the Bankruptcy Court in Cincinnati, Ohio, despite the venue provisions of 28 U.S.C. § 1409(d)." The propriety of that action was then under consideration by this court and, indeed, it was subsequently determined by this court that Transicoil's action was proper.

This court holds that the filing of a suit in the Pennsylvania court based on a claim of venue when the justifiability of that claim was a question pending for decision before this court was an act disrespectful of this court as an institution. It was an act subversive of the authority of this court. It was an act in contempt of this court. The other allegations of the Pennsylvania complaint to which we have referred above could not have been made in good faith and they reinforce our conclusion of contempt of court.

While the act of filing the Pennsylvania suit and the allegations made therein are certainly in contempt of this court, should they be punished by this court as a contempt? F.R.B.P. 9020 prescribes the proce-

dure for contempt actions in this court. That rule provides:

(a) **CONTEMPT COMMITTED IN PRESENCE OF BANKRUPTCY JUDGE.** Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.

(b) **OTHER CONTEMPT.** Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.

(c) **SERVICE AND EFFECTIVE DATE OF ORDER; REVIEW.** The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

(d) **RIGHT TO JURY TRIAL.** Nothing in this rule shall be construed to impair the right to jury trial whenever it otherwise exists.

F.R.B.P. 9020 is modeled closely upon F.R.Crim.P. 42. That is, in the Bankruptcy Court, contempt, whether civil or criminal, must conform to the same procedure as applies to a criminal contempt in an Article III court. F.R.B.P. 9020 recognizes only two classifications of contempt: (1) those acts committed in the presence of the court, and (2) other acts of contempt. Only in the first instance may the court deal with the acts of counsel summarily. Otherwise, there is a requirement of notice and actual hearing. The acts of counsel presently under examination cannot be said to have occurred in the presence of the court, and so, to pursue the contempt avenue, notice and hearing are necessary. This court is unwilling to commit any more of that limited resource, time, to this matter, especially where the acts by counsel which have raised the present question are matters which do not depend upon anything oral, but are evidenced entirely by documents. Consequently, we impose no contempt penalty for the plainly contumacious conduct of counsel.

But as well as being contumacious, the acts of counsel offend F.R.B.P. 9011, which in pertinent part provides:

**Rule 9011. Signing and Verification of Papers**

(a) **SIGNATURE.** Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. * * * The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is

called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

\*     \*     \*     \*     \*     \*

In signing the complaint in the Pennsylvania action, which contained the false or misleading statements to which we have referred above, counsel could not possibly in good faith have certified that the allegations in the Pennsylvania complaint were "well grounded in fact" and that they were "not interposed for any improper purpose, such as to harass …".

While all that we have written above relates to the filing of the Pennsylvania suit, another filing by defendants in this court is a violation of F.R.B.P. 9011. Defendants filed a contempt motion here on October 5, 1993, based on a claim that an ordered payment into escrow had not been made, and a rent payment had not been made. Counsel for defendants then knew that no escrow had been created because he and counsel for plaintiffs could not agree on escrow language and that was the reason for non-payment into escrow. The ground of complaint stated in that motion that October rent had not been paid when that payment was not due was also false. The filing of such a groundless motion is precisely the kind of conduct barred by F.R.B.P. 9011.

■ In view of our conclusion that there has been an egregious violation of F.R.B.P. 9011, the following two actions pursuant to that Rule are hereby ORDERED:

1. Pace Reich, attorney, signed the complaint in the Pennsylvania action and has been appearing here on behalf of defendants. He was admitted to practice in this court pro hac vice pursuant to oral motion of August 13, 1991. Such admission is hereby vacated and revoked.

2. Defendants and Pace Reich shall pay the attorneys' fees and costs to debtors for the work in connection with the motion for preliminary injunction filed November 1, 1993 against continuation of the Pennsylvania suit. Plaintiffs shall promptly file an application therefor with the court.